**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| SATYANARAYAN HEGDE, | : | |
| Plaintiff, | : | |
| | : | No. 5:26-cv-3865 |
| v. | : | |
| | : | |
| RENEE M. TURCHI, M.D., M.P.H., *et al.*, | : | |
| Defendants. | : | |

**O P I N I O N**

**Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 13 – Denied**

**Joseph F. Leeson, Jr.**                                              **June 26, 2026**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Satyanarayan Hegde brings claims against Renee M. Turchi, STC OpCo, LLC, d/b/a St. Christopher's Hospital for Children, Tower Health, LocumSmart, LLC, and CHG Healthcare Services. Hegde applied for the same position several times and was rejected each time. He alleges race and ethnic discrimination in violation of Title 42 U.S.C. § 1981 ("Section 1981"), retaliation in violation of Section 1981, tortious interference with prospective contractual relations, in violation of Pennsylvania common law, and a declaratory judgment under Title 28 U.S.C. §§ 2201–2202. He seeks a temporary restraining order and preliminary injunction restraining Defendants from accepting new temporary assignment confirmations or alternatively order that Hegde's candidacy be processed. For the reasons that follow, the Court denies the Motion.

II.     BACKGROUND

A.  Factual Allegations

Hegde "is a board-certified pediatric pulmonologist who holds an active, unrestricted Pennsylvania medical license." Compl. ¶ 1, ECF No. 1. He is also of "Asian-Indian/South Asian" descent. *Id.* ¶ 3.

Hegde first applied for a position at St. Christopher's Hospital for Children (part of Tower Health) in Philadelphia sometime in 2020, and Dr. Renee Turchi interviewed him "for pediatric pulmonology coverage" in September 2020. *Id.* ¶ 23. Apparently, Hedge "offered a long-term solution through his services," which Turchi declined. *Id.* "[H]is candidacy has been rejected at every presentation since." *Id.*

Tower Health "requires that all locum tenens coverage for its facilities, including St. Christopher's Hospital for Children, be sourced through LocumSmart, its exclusive vendor-management platform." Mem. in support of TRO ("Mem.") 1, ECF No. 13-1. LocumSmart works with recruiters to "present candidates" to the platform, and the candidate only sees the "actual scope, schedule, duration, compensation, and the identity of the hiring decision-maker[.]" Compl. ¶ 21.

On March 3, 2025, Hegde filed a "formal compliance complaint" with Tower Health's Chief Compliance Officer, "asserting violations of anti-discrimination and federal-contracting requirements." *Id.* ¶ 25. He also filed a charge with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission but has not heard from them yet. *See id.* Counsel for Tower Health sent Hegde a letter dated March 19, 2025, which "stated that the sole reason for [Hegde's] non-selection was the absence of a Pennsylvania medical license." *Id.* ¶ 26. Not to be deterred, Hegde obtained an active, "unrestricted

Pennsylvania medical license on August 1, 2025." *Id.* Hegde ostensibly reapplied for the position, noting that the only qualification for the position is that a candidate "hold or be eligible for" an unrestricted Pennsylvania license, which he satisfied before obtaining the Pennsylvania license, as he was "license-eligible," and allegedly satisfies now with the Pennsylvania license. *Id.*

Hegde alleges that he applied for the same position at St. Christopher's four times in 2026 alone: on January 14, March 12, April 23, and June 3. *See id.* ¶ 27. "[H]e was not selected [for the position], received no feedback, and was given no articulated reason" for the first three 2026 rejections, and his fourth application "remains pending without action." *Id.* Hegde apparently asked about the basis of his non-selection, "including direct correspondence to Dr. Turchi dated April 23 and April 29, 2026, and to Tower Health's counsel dated April 8, April 21, May 15, and May 19, 2026," and either received an automated acknowledgement or "no substantive response." *Id.* ¶ 28.

Hegde's primary issue is with the reopening of the same position on June 1, 2026. *See id.* ¶ 29. The position reopened on LocumSmart and stated, "the need is immediate." *Id.* Hegde received a text from a recruiter describing a "locum tenens Pediatric Pulmonology opportunity in Philadelphia" needing "board-certified coverage starting ASAP with an active PA license." *Id.* Another recruiter texted him about the same position on June 2. *See id.* However, Hegde notes that he cannot apply for this position: a screenshot proclaims "[p]er the sites request, please do not represent bids that have been previously been[sic] submitted as they were previously passed on by Dr. Turchi." *Id.* ¶ 30. Hegde believes that this message "operates to bar any recruiter from presenting him or obtaining fair consideration for him." *Id.*

On June 2, 2026, Hegde sent a request to Dr. Turchi (and Tower Health's and St. Christopher's counsel) that "by the close of business on June 3, 2026, his candidacy either be accepted and selected – through LocumSmart or by direct engagement—or that a legitimate, specific reason for non-selection be provided, including for the January and March 2026 presentations." *Id.* ¶ 32. Hegde also sent a litigation hold demand to LocumSmart and CHG Healthcare. *See id.* No Defendant responded by June 3. *See id.* ¶ 33. At 11:27 a.m. on June 3, 2026, "NorTek Medical Staffing, Inc. presented [Hegde] for the position on LocumSmart, and LocumSmart issued bid-verification number B-SCHF1-260603-41857, for coverage between July 13, 2026 and July 31, 2027." *Id.* ¶ 34. By June 5, 2026, Defendants took no action on Hegde's bid, "against a posting that says[,] 'the need is immediate.'" *Id.*

### B. Procedural History

Hegde filed his Complaint on June 5, 2026. *See* ECF No. 1. He brings four claims: (1) Race and Ancestry Discrimination in Contracting under Section 1981 against all Defendants, *see* Compl. ¶¶ 42–46; (2) Retaliation under Section 1981 against all Defendants, *see id.* ¶¶ 47–50; (3) Tortious Interference with Prospective Contractual Relations under Pennsylvania Common Law against Defendants Turchi, LocumSmart, and CHG Healthcare, *see id.* ¶¶ 51–58; and (4) Declaratory Judgment under 28 U.S.C. §§ 2201–2202 against all Defendants based upon the aforementioned claims, *see id.* ¶¶ 59–61.

Also on June 5, Defendants Renee Turchi, Tower Health, and STC OPCO filed waivers of service. *See* ECF Nos. 6–8. Hegde paid the filing fee on June 8, 2026. *See* ECF No. 11. That same day, Hegde filed the Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. *See* Mot., ECF No. 13. Hegde seeks "a brief pause on new temporary-assignment confirmations—which, in this market, are scheduled only one to two months ahead

and vest no permanent rights—or, alternatively, an order that his candidacy—including the June 3 presentation the facility has now declined—be processed through ordinary credentialing on equal terms, notwithstanding the candidate-exclusion designation." Mem. 3, ECF No. 13-1. Hegde attached a Memorandum in support of the Motion, *see id.*, his Declaration, *see* ECF No. 13-2, and numerous exhibits, *see* ECF No. 13-3. Hegde alleges that he faces irreparable harm from "the compounding, unquantifiable professional injury of a procedural subspecialist kept out of practice—erosion of clinical skills and currency that no later judgment restores; a widening, unexplained gap in his practice record that makes him progressively less marketable; and a 'passed on by Dr. Turchi' designation lodged inside a closed platform network where he can neither see, answer, nor correct it, and from which it propagates to every recruiter who opens the posting" pose reputational harm. Mem. 6–7. Hegde filed a Supplemental Memorandum to the Motion on June 15, 2026, wherein he alleged that the position had been filled, but still continued to be advertised. *See* Suppl. Mem., ECF No. 16. Defendants Turchi, STC OpCo, and Tower Health filed a Response in Opposition on June 22, 2026. *See* ECF No. 19.

## III.    LEGAL STANDARDS

### A.  Motion for Temporary Restraining Order – Review of Applicable Law

"Rule 65 governs the issuance of a preliminary injunction." *Checker Cab Phila., Inc. v. Uber Techs., Inc.*, 2015 U.S. Dist. LEXIS 26471, *5 (E.D. Pa. Mar. 3, 2015). "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). "In order to prove irreparable harm, the moving party must

demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Bioquell, Inc. v. Feinstein*, No. 10-2205, 2011 U.S. Dist. LEXIS 16081, at *15 (E.D. Pa. Feb. 14, 2011) (internal quotations omitted). *See also CPG Int'l LLC v. Georgelis*, 2015 U.S. Dist. LEXIS 51712, at *31 (M.D. Pa. Apr. 20, 2015) ("In a breach of contract action, monetary loss is not sufficient to show irreparable harm." (applying Ohio law)). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc.*, 369 F.3d at 708 (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).

"The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros*, 857 F. Supp. at 446.

### B.  Discrimination – Review of Applicable Law

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448–49 (3d Cir. 2015). Disparate treatment claims brought under Title VII[1] are analyzed using the three-step framework of *McDonnell Douglas Corp. v. Green.  See* 411 U.S. 792 (1973). *See Rabinowitz v.*

---

[1]     "Race and gender-based discrimination claims brought under Title VII and race-based claims brought under § 1981 are all analyzed under the same burden-shifting scheme." *Collins v. Kimberly-Clark Pa., LLC*, 247 F. Supp. 3d 571, 588 (E.D. Pa.), *aff'd,* 708 F. App'x 48 (3d Cir. 2017) citing *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 172 n.4 (3d Cir. 2014) ("Because the substantive elements of an employment discrimination claim brought under § 1981 are identical to those brought under Title VII, § 1981 claims are also governed by the McDonnell Douglas burden-shifting framework.").

*AmeriGas Partners, L.P.*, 252 F. App'x 524, 527 (3d Cir. 2007). "Under the *McDonnell Douglas* paradigm, an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). The Third Circuit Court of Appeals has "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." *Fasold*, 409 F.3d at 184. "It is important to note that although the 'burden of production' may shift during the *McDonnell Douglas* inquiry, the 'ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee].'" *Id.* (citing *Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 759 n.3 (3d Cir. 2004)); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (explaining that once the plaintiff establishes a prima facie case, the law creates a "presumption" of unlawful discrimination, which is rebutted if the employer articulates a legitimate nondiscriminatory explanation for the employer's action, but the "presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the ultimate burden of persuasion").

To establish a prima facie case of employment discrimination, a plaintiff must show that:

(1) he is a member of a protected class;
(2) he was qualified for the position in question;
(3) he suffered an adverse employment action; and

(4) the adverse action occurred under circumstances giving rise to an inference of discrimination.

*McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). "The central focus in a discrimination case is "whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15. (1977)).

For an employment discrimination in hiring claim to be valid, a plaintiff who is qualified for the position must be rejected for the position, and thereafter the position must remain open. *See McDonnell Douglas*, 411 U.S. at 802. "In order to demonstrate a prima facie case of discrimination under Title VII"[2] for a failure-to-hire claim, "an individual must show that he or she: (1) is a member of a protected class; (2) was qualified for the position sought; (3) was subject to an adverse employment action despite being qualified; and, (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff to fill the position." *Lula v. Network Appliance*, 255 F. App'x 610, 611–12 (3d Cir. 2007) (quoting *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003)).

### C.  Retaliation – Review of Applicable Law

To establish a prima facie case of retaliation under Section 1981, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected  activity; and (3) a causal connection between

---

[2]     "Race and gender-based discrimination claims brought under Title VII and race-based claims brought under § 1981 are all analyzed under the same burden-shifting scheme." *Collins, LLC*, 247 F. Supp. 3d at 588, *aff'd,* 708 F. App'x 48 (citation omitted).

the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Boykins v. SEPTA*, No. 17-1980, 2018 WL 460652, at \*2, \*6 (3d Cir. 2018) (analyzing claims under Title VII and the PHRA the same).

Pursuant to the first element, a report to a superior may constitute protected activity where discrimination is specifically alleged in the verbal or written report. *See LeBlanc v. Hill Sch.*, No. 14-1675, 2015 WL 144135, at \*14 (E.D. Pa. Jan. 12, 2015) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)); *see also Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (stating that the employee must have a good faith, reasonable belief that the activity complained of is unlawful (citing *Clark Cnty v. Breeden*, 532 U.S. 268, 271 (2001))).

As to the second element, a plaintiff must show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. . . . The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Suders*, 542 U.S. at 141.

Under the third element, a plaintiff must show a causal connection between the protected activity and the retaliatory act. *See Moore,* 461 F.3d at 341–42. In determining causation, courts often look to the "temporal proximity between the protected activity and the alleged discrimination" and "the existence of a pattern of antagonism in the intervening period." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (citing *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001)) (internal quotation marks omitted), *overruled on other*

9
062626

*grounds by Burlington Northern*, 548 U.S. 53. Since there is no single, definite way of showing causation, the court must look at the evidence "as a whole" to determine if retaliation has been sufficiently pled. *See Jensen*, 435 F3d at 450 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000)). However, "for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (explaining that "a prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim" (internal quotations and citations omitted)). "Instead of requiring a prima facie case, the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted).

### D. Tortious Interference with Prospective Contractual Relations – Review of Applicable Law

To sustain a claim of intentional, or tortious, interference with prospective contractual relations under Pennsylvania law, a plaintiff must demonstrate (1) "a prospective contractual relation"; (2) the "purpose or intent," on the part of the defendant, "to harm the plaintiff by preventing the relation from occurring"; (3) "the absence of privilege or justification on the part of the defendant"; and (4) "the occasioning of actual damage resulting from the defendant's conduct." *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 184 (3d Cir. 1997).

## IV.    ANALYSIS

### A. Likelihood of Success on the Merits

Hegde brings claims for discrimination and retaliation under Section 1981, tortious interference with prospective contractual relations, and declaratory judgment based upon the same. He is not likely to succeed on any of them.

Hegde's discrimination and retaliation claims appear to lack merit. Although Hegde has alleged adverse action based on Defendants' decision to not hire him, *see Ismail v. Honeywell Int'l, Inc.*, No. 21-143, 2023 WL 2385135, at *5 (M.D. Pa. Mar. 6, 2023) (noting that failure to hire could be an adverse employment action), he has failed to connect the Defendants' decision to his race or national origin.

Hegde's tortious interference with prospective contractual relations claim also appears to lack merit. Hegde alleges that he had prospective contractual relations with St. Christopher's and Tower Health and "existing and prospective relationships with NorTek Medical Staffing, Inc., and with the LocumSmart bid process[.]" Compl. ¶ 52. Hegde alleges that he "satisfies every posted criterion; the candidate pool in this subspeciality is small; and his candidacy stands presented under a live, confirmed bid." *Id.* ¶ 53. "A prospective contractual relation 'is something less than a contractual right, something more than a mere hope.'" *Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 140 (3d Cir. 2005) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (1979)). Here, Hegde, who unsuccessfully applied for the position numerous times, had nothing more than a mere hope. Additionally, Hegde appears to have failed to allege how LocumSmart intentionally interfered in the bid process.

Finally, declaratory judgment is a remedy, not an independent cause of action. *See Haque v. Swarthmore Coll.*, No. 15-1355, 2016 WL 11812329, at *16 (E.D. Pa. Feb. 3, 2016) ("A claim for injunctive relief pleads for a remedy, but does not constitute an independent cause of action.") (citations omitted).

### B. Irreparable Harm

Additionally, Hegde faces no irreparable harm from the message on the job posting remaining visible.

First, Hegde's economic loss is insufficient to allege irreparable harm. Hegde alleges that he will lose "no less than $18,000 per week of missed work." Mem. 6. "Economic loss does not constitute irreparable harm." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). Therefore, Hegde's loss of income does not present irreparable harm.

Second, equally hollow are Hegde's concerns about reputational harm. *See* Mem. 6–7. Although "loss of control of reputation, loss of trade, and loss of good will" can present irreparable harm, *Kos Pharms., Inc.*, 369 F.3d at 726, Hegde makes no allegations that the Defendants' postings or rejections apply to him, and Defendants make no public reference to him in the posting. Thus, the Defendants' conduct does not pose irreparable harm to Hegde.

The Court need not consider the remaining two factors (that granting preliminary relief will not result in even greater harm to the nonmoving party; and that the public interest favors such relief) because Hegde has failed to make a successful showing of either the likelihood of succeeding on the merits or irreparable harm. *See Reilly. v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017).

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a TRO or preliminary injunction is denied. An appropriate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

12
062626